# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

IN RE: ) IN PROCEEDINGS UNDER
) CHAPTER 13
)
APRIL LENIX ) CASE NO.: 04-19548
)
) JUDGE: MORGENSTERN-CLARREN
)
Debtor ) <u>MOTION OF U.S. BANK, N.A.,</u>
) <u>SUCCESSOR BY MERGER TO THE</u>
) <u>LEADER MORTGAGE COMPANY</u>
) <u>FOR RELIEF FROM STAY</u>
)
)

U.S. BANK, N.A., SUCCESSOR BY MERGER TO THE LEADER MORTGAGE COMPANY, (the "Movant") moves this Court, under §§ 361, 362, 363 and other sections of the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code") and under Rules 4001, 6007, and other rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order conditioning, modifying or dissolving the automatic stay imposed by § 362 of the Bankruptcy Code. In support of this Motion, the Movant states:

## MEMORANDUM IN SUPPORT

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157 (b)(2). The venue of this case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2. On May 29, 2001, the Debtor listed above (collectively, the "Debtor") obtained a loan from Movant in the amount of $70,976.00. Such loan was evidenced by a Promissory Note dated May 29, 2001 (the "Note"), a copy of which is attached as Exhibit A.

1

3. To secure payment of the Note and performance of the other terms contained in it, the Debtor executed a Mortgage/Security Agreement dated May 29, 2001 (the "Security Agreement"). The Security Agreement granted a lien on the real property (the "Collateral") owned by the Debtor, located at 1344 East 91st Street, Cleveland, OH 44106 and more fully described in the Security Agreement.

4. The lien created by the Security Agreement was duly perfected by the filing of the Security Agreement in the office of the Cuyahoga County Recorder on May 29, 2001. A copy of the Security Agreement is attached to this Motion as Exhibit B.

5. The Note and Security Agreement were transferred as follows:

> On January 8, 2002 to The Leader Mortgage Company. The transfer is further evidenced on Exhibit D.

6. The value of the Collateral is $25,500.00. This valuation is based on the fair market value as determined by the Cuyahoga County Auditor.

7. As of the date of this Motion, there is currently due and owing on the Note the outstanding balance of $68,041.02, plus interest accruing at a rate of 6.19% per annum [$11.54 per day] from September 1, 2004.

8. Other parties known to have an interest in the Collateral are N/A.

9. Movant is entitled to relief from the automatic stay under §§ 362(d)(1) and/or 362(d)(2) for these reasons:

> Debtor has failed to provide adequate protection for the lien held by the Movant for the reasons set forth below.
>
> Debtor has failed to make periodic payments to Movant since the commencement of this Bankruptcy case, which unpaid payments from August 1, 2005 are in the aggregate amount of $2,385.53 through November 1, 2005.

10. Movant has completed the worksheet attached as Exhibit C.

11. This Motion conforms to the standard form adopted in this District except as follows: N/A

WHEREFORE, Movant prays for an Order from the Court granting Movant relief from the automatic stay of § 362 of the Bankruptcy Code to permit Movant to proceed under law and for such other and further relief to which the Movant may be entitled.

Respectfully Submitted,

/s/ Christian E. Niklas
SHAPIRO & FELTY, L.L.P.
BY: Christian E. Niklas (0066725)
Attorney for Movant
1500 West Third Street, Suite 400
Cleveland, OH 44113
(216) 621-1530 ext. 216
(216) 373-1338-fax
cniklas@logs.com

## CERTIFICATE OF SERVICE

I certify that on the 2nd of November, 2005, copies of this Motion for Relief from Automatic Stay were served by mailing the same by regular U.S. Mail and/or electronically as permitted by local rule to the following:

April Lenix
1344 E. 91st St.
Cleveland, OH 44106

Jason T. Baker, Esq.
55 Public Square
# 1330
Cleveland, OH 44113

Craig Shopneck
BP Tower
200 Public Square Suite 3860
Cleveland, OH 44114

/s/ Christian E. Niklas
SHAPIRO & FELTY, L.L.P.
BY: Christian E. Niklas (0066725)
Attorney for Movant

04-45983; jz; November 1, 2005; Saved As: 45983.mrs

4

Prepared by: P. THOMAS

Multistate

LOAN #: 3886394

# NOTE

Lm 4( 505-7

FHA Case No.
OH4124601178703

May 29, 2001
[Date]

Certified copy of the and exact original.

1344 E 91ST STREET CLEVELAND, OH 44106-
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE HOME LOANS, INC.
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of SEVENTY THOUSAND NINE HUNDRED SEVENTY SIX and 00/100 Dollars (U.S. $ 70,976.00         ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   SIX & NINETEEN HUNDREDTHS percent ( 6.190 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on July 1st    , 2001. Any principal and interest remaining on the first day of June       , 2031, will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at
4500 PARK GRANADA, CALABASAS, CA 91302-1613
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $434.25         . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY
(A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR                                              percent ( 4.000 %) of the overdue amount of each payment.

**EXHIBIT A**

 

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)　　　　　　　_____ (Seal)
APRIL LENIX　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　　　　　_____ (Seal)
　　　　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　　　　　　　　　-Borrower

TRUE AND CERTIFIED COPY
EQUITY TITLE AGENCY, INC.

Sue Green

| WHEN RECORDED MAIL TO:<br>COUNTRYWIDE HOME LOANS, INC.<br>MSN SV-79 / DOCUMENT CONTROL DEPT.<br>P.O. BOX 10266<br>VAN NUYS, CALIFORNIA 91410-0266<br>DOC ID #: 0003886394370106<br>ESCROW/CLOSING #: | SPACE ABOVE FOR RECORDERS USE<br><br>PARCEL ID #: 10714189 |
|---|---|

FHA Case No.
OH4124601178703

State of Ohio

# OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on May 29, 2001 . The Mortgagor is
APRIL LENIX, A SINGLE WOMAN

whose current mailing address is
8817 MERIDIAN AVE CLEVELAND, OH 44106-
("Borrower"). This Security Instrument is given to
COUNTRYWIDE HOME LOANS, INC.
which is organized and existing under the laws of NEW YORK , and whose address is
4500 PARK GRANADA, CALABASAS, CA 91302-1613
("Lender"). Borrower owes Lender the principal sum of
SEVENTY THOUSAND NINE HUNDRED SEVENTY SIX and 00/100
Dollars (U.S. $ 70,976.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on June 1, 2031 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in
CUYAHOGA County, Ohio:
SEE EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF.

Page 1 of 6

VMP-4R(OH) (9604).01  CHL (03/01)   VMP MORTGAGE FORMS - (800)521-7291

FHA Ohio Mortgage - 4/96
Initials: A.L.


EXHIBIT B


*23991*


*0038863940000PX2A0*

Prepared by: P. THOMAS

**COUNTRYWIDE HOME LOANS, INC.**
BRANCH #618
11423 MAYFIELD ROAD
CLEVELAND, OH 44106-
(216)707-2110
Br Fax No.: (216)707-2120

DATE: 05/17/2001
CASE #: OH4124601178703
DOC ID #: 0003886394370106
BORROWER: APRIL LENIX
PROPERTY ADDRESS: 1344 E 91ST STREET
CLEVELAND, OH. 44106-

## LEGAL DESCRIPTION EXHIBIT A

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio: and known as being Sublot No. 84 in Curtiss and Ambler's Wade Park and Superior Subdivision of part of Original One Hundred Acre Township Lot No. 384 as shown by the recorded plat in Volume 21 of Maps, Page 5 of Cuyahoga County Records, as appears by said plat, be the same more or less, but subject to all legal highways.

FHA/VA/CONV
Legal Description Exhibit A
2C4041XX (02/01)

which has the address of 1344 E 91ST STREET CLEVELAND
[Street, City]
Ohio    44106-    ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note; and
Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may

be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**
    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

CASE #: OH4124601178703  DOC ID # 0003886394370106

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider

CASE #: OH4124601178703                                      DOC ID # 0003886394370106

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_Beverly S. Green_  _April Lenix_ _____ (Seal)
Beverly S. Green    APRIL LENIX                                -Borrower

_Beverly J. Wenzel_ _____ (Seal)
Beverly J. Wenzel                                              -Borrower

_____ (Seal)
                                                               -Borrower

_____ (Seal)
                                                               -Borrower


STATE OF OHIO,           Cuyahoga                County ss:

On this  29th  day of  May, 2001  ,  , before me, a Notary Public in and for said County and State, personally appeared

            April Lenix

, the individual(s) who executed the foregoing instrument and acknowledged that she did examine and read the same and did sign the foregoing instrument, and that the same is her free act and deed.
IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:                _Beverly S. Green_
                                      Notary Public
           (Seal)

                                      Beverly S. Green
Prepared by: P. THOMAS                Notary Public, State of Ohio
11423 MAYFIELD ROAD, CLEVELAND, OH 44106-   Lorain County
                                      My Commission Expires March 30, 2005

EXHIBIT C

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

IN RE: ) IN PROCEEDINGS UNDER
) CHAPTER 13
)
) CASE NO.: 04-19548
APRIL LENIX )
) JUDGE: MORGENSTERN-CLARREN
      Debtor )
)
)

## RELIEF FROM STAY/ADEQUATE PROTECTION EXHIBIT AND WORKSHEET

Total indebtedness of debtor(s) on date of filing of this Motion ( 11/ 03/ 05):

    PRINCIPAL:     $68,041.02
    INTEREST     $ 4,916.04    (per day rate $11.54)
    OTHER CHARGES:[1]     $ N/A
        **SUBTOTAL INDEBTEDNESS:**   $72,957.06

Less:     **CREDITS DUE DEBTOR(S)**   $ 0.00
        **TOTAL INDEBTEDNESS:**   $ 72,957.06

**Arrearages:**
    BEFORE DATE OF FILING:   $8,477.54
    AFTER DATE OF FILING:[2]   $2,385.53

        **TOTAL ARREARAGES:**   $10,863.07

**Loan Data:**
    DATE OF LOAN   May 29, 2001
    FACE AMOUNT OF LOAN   $70,976.00
    (Principal/Cash Price):   $
    CURRENT INTEREST RATE:   6.19%
    MONTHLY PAYMENT:
    Amount:   $579.37
    No. of Payments Due:   4
    Date of Last Payment:   July 1, 2005

---

[1] For Chapter 13 Cases, an itemization is attached.
[2] For Chapter 13 Cases, a post-petition payment history is attached.

**Collateral for the loan is:**
1.  1344 East 91st Street, Cleveland, OH 44106

**Estimated Market Value of Collateral:**
    At time of loan: $_____
    At time of this hearing: $25,500.00
    Source of Valuation(s): Cuyahoga County Auditor's Office

Did Movant make the loan? (Yes/No) __No__ .[3]

This Exhibit and Worksheet was prepared by:

/s/ Christian E. Niklas
SHAPIRO & FELTY, L.L.P.
BY: Christian E. Niklas (0066725)
Attorney for Movant
1500 West Third Street, Suite 400
Cleveland, OH 44113
(216) 621-1530 ext. 216
(216) 373-1338-fax
cniklas@logs.com

---

[3] If no, a history of each transfer from the original lender is attached.

04-45983; jz; November 1, 2005; Saved As: 45983.mrs

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY
RELA 01/08/2002 02:21:56 PM
**200201080893**

CUYAHOGA COUNTY RECORDER
200201080893 PAGE 1 of 1

Recording requested by
Countrywide Home Loans, Inc.
When recorded mail to:
Countrywide Home Loans, Inc.
DMS Corrections & Deficiencies
1800 Tapo Canyon Road
Simi Valley, CA 93063
Attn: Charmaine Gobo

*CORRECTIVE*

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#   00038863942005N
Commitment# 384

For value received, the undersigned, Countrywide Home Loans, Inc., 1800 Tapo Canyon Road, Simi Valley, CA 93063, hereby grants, assigns and transfers to:
The Leader Mortgage Company
1015 Euclid Avenue, Cleveland, OH  44115

\* All its interest under that certain Mortgage dated  5/17/01, Executed by:
APRIL LENIX, Mortgagor as per MORTGAGE recorded as Instrument No.
200105301271 on 5/30/01 in Book          Page           of official
records in the County Recorder's Office of CUYAHOGA County, OHIO.
Tax Parcel = 10714189,  CUYAHOGA COUNTY TREASURER
Original Mortgage $70,976.00
1344 E 91ST STREET, CLEVELAND, OH 44106

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

\* Marital Status: a single woman.

Dated: 12/14/01
State of California
County of Ventura

Countrywide Home Loans, Inc.
By _____
Karen Workman
Assistant Secretary

Witness

Brande Voss            Alicia Weber

On 12/14/01 before me, Jean L. Viraldo, personally appeared Karen Workman Assistant Secretary of Countrywide Home Loans, Inc., Personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their duly authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the persons acted, executed the instrument.
Witness my hand and official seal.

Signature _____
Jean L. Viraldo

JEAN L. VIRALDO
Commission # 1318902
Notary Public - California
Ventura County
My Comm. Expires Aug 26, 2005

Prepared by: Charmaine Gobo
1800 Tapo Canyon Rd. SV2-116
Simi Valley, CA 93063
Phone # (805) 577-4290

PREPARED A CORRECTIVE ASSIGNMENT TO CORRECT AND REPLACE
BK# PG#
DOC# 200106130742
THAT WAS RECORDED ON 6/13/01

**EXHIBIT D**